## DOBROWOLSKI v. HOLLOWAY GRAVEL CO., Inc.

No. 1698.

Court of Appeal of Louisiana. First Circuit.

April 10, 1937.

Ponder & Ponder, of Amite, for appellant.

Richard Kilbourne, of Clinton, for appellee.

DORE, Judge.

This suit is for damages in the sum of $421, which plaintiff claims resulted to his automobile when it was struck by a gravel

train operated by employees of defendant and while said train was being backed over a switch track out of McManus toward Jackson across the highway about 9:30 p. m. on February 10, 1936. The negligence charged against defendant is that this train of fourteen empties and one loaded coal car was being pushed or backed across the highway on a dark night without any lights or warning signals on the lead car and without any flagman or signals at the crossing to warn motorists on the highway of the approach of the backing train or cars; that no warning signals were given of the approach of the train.

The defendant denied that it was guilty of the negligence charged against it, but averred, on the contrary, that its train was equipped with lights and signals; that the whistle was blown and the bell was rung on approaching the crossing in the usual way, and a brakeman was stationed on the front or lead car while backing over the crossing with a lantern waving in his hand to warn traffic on the highway; that the accident was caused by the negligence of plaintiff in failing to keep a proper lookout and in failing to stop, look, and listen before attempting to cross the track at a point where his view was unobstructed; that plaintiff speeded up his automobile on reaching the crossing in an effort to beat the train across the track.

Judgment was rendered in favor of the plaintiff for $383, from which judgment defendant has appealed.

The first question presented is whether or not the defendant's employees were guilty of negligence in failing to have the proper lights and signals on this train while backing over the crossing. It appears that the switch track crosses the highway at this point at a slight angle, running in an easterly and westerly direction. The train was being pushed westerly toward Jackson. The night was dark, cold, and slightly misty. The locomotive pushing the string of cars was something over 600 feet from the lead car which was being pushed out in front toward the highway at from ten to fifteen miles per hour. The car which plaintiff was driving was coming from a southwesterly direction.

With plaintiff on the front seat was a Mr. Lockhart, the railroad agent at McManus. On the back seat, on the right side, was another gentleman, Mr. Schutzman. There were no obstructions to the view which would have prevented the driver of the automobile from seeing the lights on this front or lead car as it approached the crossing, if there was a light on this car, or if any one was signaling from that car with a lantern. All three men in this car say that they did not see any lights on the train as it approached the crossing; that if there had been a light on the train they would have seen it.

A colored switchman testified that he was on the left side of this lead car as it backed into the crossing; that he was flagging cars on the highway with a lantern; that he saw this automobile coming two or three hundred feet up the road, and he endeavored to flag it down with his lantern but the automobile kept coming until it got near the crossing, then slowed down, but suddenly speeded up and tried to beat the train across the track. He says that when the train hit the automobile, he jumped on the ground and flagged the engineer to stop the train after the engineer got up to the crossing.

The fireman and the engineer testified that the negro switchman was on the front car backing over the crossing with a lantern; that the lantern was burning when they saw it, but that they did not see it as the lead car approached the crossing; they did not know that the train had struck the automobile until the locomotive was even with the crossing when their attention was called by signals from the negro switchman and the men who had been in the wrecked automobile.

It is manifest from this testimony of defendant's own witnesses that the train moved over 600 feet after the front or lead car had struck the automobile on the crossing before it came to a stop or that the engineer even had knowledge thereof. It is unreasonable to believe that, if this negro switchman had jumped off the train as he said he did when the collision occurred, he would have stood there without flagging the train to stop before the engine got up to the crossing, a distance of over 600 feet. We believe that the facts justify the conclusion that this negro not only failed to flag the automobile, but he did not see the automobile himself, until after the collision. The trial judge must have reached the conclusion that there was no light or signal on this backing train. There is considerable doubt as to whether or not there were any lights on the locomotive, but conceding that there were lights on the engine, this was not sufficient, as the condition of the crossing

and the darkness of the night required a light on the front or lead car as it backed into the crossing, or some signal at the crossing of the approach of the train. A light on the locomotive over 600 feet away, if there were such a light, was not sufficient, as such a light would not enable a motorist on the highway to see a train of unlighted cars more or less noiselessly, even stealthily, creeping up from out the darkness onto the highway. Nor would the blowing of the whistle and the ringing of the bell on the locomotive that distance from the crossing be sufficient warning, assuming that the whistle was blown and the bell rung, on which point there is also some doubt. Clements v. Texas & Pacific R. R. Co., 148 La. 1050, 88 So. 394.

■ There is a difference in the responsibility of a railroad company in protecting a crossing at night during ordinary switching operations where the highway is blocked for a reasonable time by railroad cars, and the duty to protect the crossing when backing a string of cars over the crossing on a dark night. In the former case there is no duty on the railroad to place a flagman or signal at the crossing or on the cars to warn approaching motorists of the blocking of the crossing, unless there are unusual dangers present requiring such precautions. The motorist, under such circumstances, is required to see the train across the highway from the headlights of his automobile. Plummer v. Gulf, M. & N. R. R. Co. (La.App.) 153 So. 322; Aaron v. Martin et al. (La.App.) 167 So. 106. In the latter situation, however, it is recognized as much more dangerous to back a string of cars from out the darkness onto the highway without lights on the lead car, or a flagman stationed at the crossing to warn motorists. It is gross negligence to back a string of cars at night over a public crossing without lights or proper warning signals. Blanchard v. Gulf, C. & Santa Fe R. R. Co., 1 La.App. 169; Robertson v. Missouri Pac. R. R. Co. (La.App.) 165 So. ·527, and the cases therein cited. We therefore conclude that the defendant was guilty of negligence in this case.

The most serious question in the case is whether or not the plaintiff was guilty of such contributory negligence in failing to stop, look, and listen before entering the crossing as to, bar his recovery. Plaintiff testified that he was driving about 25 miles per hour; that his windshield wiper was working and he could see ahead on the highway within the range of the headlights of his car; that he saw no train approaching the crossing within the range of his lights; that he was familiar with the crossing and the fact that these gravel trains occasionally passed over it; that as he approached the crossing he slowed down to 5 or 10 miles per hour and did not see any lights and proceeded to cross; that as the front of his car got right up to the track he heard the squeak of the wheels of the train on the rails right at him; that he did not have time to stop and pulled his car to the left and speeded up in an effort to beat the train across the track, but the left corner of the lead car of the backing train struck his automobile near the center and knocked it off the track.

■ Learned counsel for defendant contends that under the testimony of plaintiff himself, he is barred from recovery for the reason that he violated a rule of the road as embraced in the law of the state regulating traffic on the highways, by failing to stop before crossing a railroad track. This court has committed itself to the rule that the failure of a motorist to come to a complete stop before crossing a railroad track does not necessarily and at all event preclude a recovery unless it appears that the failure to stop was the proximate cause of the accident. Robertson v. Missouri Pac. R. R. Co. (La.App.) 165 So. 527; Aaron v. Martin (La.App.) 167 So. 106. This rule means that the motorist will not be held guilty of such contributory negligence as to bar recovery if he keeps a proper lookout on approaching the crossing and has his car under such control as to be able to come to an immediate stop if necessary, and provided further, that it reasonably appears from the circumstances of the particular case that the accident would have been avoided had the motorist come to a complete stop.

■ Applying this rule to the present case, we cannot say that plaintiff was guilty of such negligence in failing to come to a complete stop before crossing the track as to constitute such failure the proximate cause of the accident. He was looking ahead as far as the lights of his car would permit. He had no reason to believe that a railroad car would be backed onto the road in front of him, out of the darkness of the night, without lights and without warning. Had he come to a complete stop several feet from the crossing, it does not reasonably appear that he could have seen within the range of his headlights this freight car creeping on the highway from out the

darkness of the night. It is well known that a freight car can be backed out into the road with little noise and is movements are almost imperceptible unless there are some lights or signals to indicate its approach.

The case of Draiss v. Payne, Agent, 158 La. 652, 104 So. 487, presented a state of facts very similar to the situation in this case. The train was backed over a crossing at night without lights or signals and struck an automobile going 13 or 14 miles per hour over the crossing. It was held in that case that the motorist had a right to presume that the railroad would not back an unlighted train over the crossing without signals or warning, and the failure of the motorist to come to a complete stop before making the crossing did not bar his recovery. See, also, Aymond v. Western Union Tel. Co. et al., 151 La. 184, 91 So. 671; Holstead v. Vicksburg, S. & P. R. Co., 154 La. 1097, 98 So. 679; Blanchard, Tutrix, v. Gulf, C. & Santa Fe R. R. Co., 1 La.App. 169.

The trial judge allowed $383 damages. This was evidently based on a value of $525 on the wrecked car before the accident. An allowance of $150 was made to plaintiff on this car after the wreck on a trade-in from which the damage is estimated at $375 plus $8 paid for moving the wrecked car. The evidence justifies this award.

For these reasons, the judgment is affirmed.